# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | |
|---|---|
| **GARY MEERKREEBS,** | * |
| Plaintiff, | * |
| v. | *   Case No.: PWG-17-695 |
| **ASTOR & SANDERS CORP.,** *et al.*, | * |
| Defendants. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Plaintiff Gary Meerkreebs contends that he was happily working for Indus Corporation ("Indus") when Defendants Astor & Sanders Corporation ("Astor") and Systems Integration and Development ("Systems") (together, the "Companies") approached him about employment, seeking his expertise with regard to a bid proposal they would be submitting. Compl. ¶¶ 4, 7–8, 16–17, ECF No. 1.[1] Meerkreebs stated the terms of employment he would accept, and the Companies agreed, but they did not at that time memorialize the terms of the agreement in writing. Then, three months later, Astor sent him an offer letter that stated that his employment would be at-will and did not mention the specific terms discussed and agreed to in the interview. *Id.* ¶¶ 18–26. Relying on the representations in the interview, Meerkreebs signed the contract, resigned from Indus, and went to work for the Companies. *Id.* ¶¶ 26–28. In so doing, he assisted

---

[1] "At this stage, all well-pleaded allegations in a complaint must be considered as true and all factual allegations must be construed in the light most favorable to the plaintiff." *Nam v. 2012 Inc.*, No. DKC-15-1931, 2016 WL 107198, at \*3 (D. Md. Jan. 11, 2016) (citing *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999)).

the Companies with preparing the bid that was the subject of their discussions prior to Meerkreebs accepting employment.

As soon as the bid was submitted, the Companies reneged on some of the terms they agreed to as conditions of Meerkreebs's employment, and six weeks later, they "temporarily" terminated his employment, pending approval of the contract for which he had prepared the bid, even though one of the conditions he set was "that his position . . . not [be] dependent upon the award of any specific contract." *Id.* ¶¶ 29–30, 33. Meerkreebs filed this lawsuit against the Companies, claiming intentional misrepresentation (Count I), negligent misrepresentation (Count II), and promissory estoppel (Count III). *Id.* ¶¶ 35–53. The Companies have moved to dismiss, ECF Nos. 13 & 14,[2] arguing that Meerkreebs cannot plausibly allege reasonable reliance on a misrepresentation or false statement, which is an element of all of his claims. But because Meerkreebs has alleged reasonable reliance and otherwise stated claims for negligent and intentional misrepresentation against the Companies, I will deny the motions. Meerkreebs consents to the dismissal of his promissory estoppel claim, and therefore I will dismiss that claim.

**Factual Background**

Sadhna Agrawal owns Defendant Astor, and her husband Ajay Agrawal owns Defendant Systems, another company "housed in the same building." Compl. ¶¶ 9–11. The Companies "share a human resources department, as well as a single proposal department, business

---

[2] Systems joined Astor's motion and provided additional argument, and the parties fully briefed the motions. ECF Nos. 13-1, 14, 15, 16. After the briefing was complete, Meerkreebs asked to stay the case for sixty days while his counsel was away on medical leave, ECF No. 17. I administratively closed the case through February 21, 2018. ECF No. 20. The case is now reopened, and a hearing on the pending motion is not necessary. *See* Loc. R. 105.6.

development department, IT department, and other shared resources," and the Agrawals "jointly supervise all [of the Companies'] employees." *Id.* ¶¶ 13–14.

Meerkreebs interviewed with the Companies on or about March 25, 2016 and informed them that "he wanted contract delivery responsibilities, **his position could not be tied to a contract** (billable versus overhead), and that his position could not be 'at risk' if a contract ended or was not awarded." Compl. ¶¶ 18–23. He also stated his requirements for hours, salary, and telecommuting. *Id*. ¶¶ 24–25. Systems's chief executive officer agreed to these terms "and said 'no problem.'" *Id*. ¶¶ 23, 25. Meerkreebs "received on official non-contingent offer of employment" from Astor, dated June 24, 2016 ("Offer Letter"), accepted the offer, and gave notice to Indus on June 27, 2016. *Id*. ¶¶ 26–27. The Offer Letter, which Meerkreebs signed on June 27, 2016, stated:

> It is my pleasure to offer you a position as the Senior Project Manager at Astor & Sanders Corp. (Astor). . . .
>
> . . .
>
> This offer is contingent upon satisfactory results of the Astor employee background screening. . . .
>
> This offer of employment is valid for three days from the date of this letter. Unless otherwise arranged, your starting date will be July 11, 2016. If you accept this offer of employment, you will be an at-will employee of Astor. As such, Astor makes no guarantee of continued employment or employment for a specific length of time. . . .

Offer Ltr., Astor Mem. Ex. 1, ECF No. 12-1, at 16.[3]

Meerkreebs began working for the Companies in July 2016 and for two months, he worked on the bid proposal for them. Compl. ¶ 28. But, as soon as it was submitted, the

---

[3] Astor attached the Offer Letter to its Motion to Dismiss. I may consider this document without converting the motion to one for summary judgment, because it "was integral to and explicitly relied on in the complaint and [Meerkreebs does] not challenge its authenticity." *CACI Int'l, Inc. v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009) (citation omitted).

Companies refused to honor the terms they agreed to as conditions of Meerkreebs's employment, specifically the times he wanted to arrive at and leave work each day and the telecommuting days he wanted. *Id*. ¶¶ 29–30. He feels that they hired him for a specific contract and once that contract's bid was submitted, they violated the terms that he demanded, and they agreed to. *Id.* ¶ 31. About six weeks later, the Companies told Meerkreebs that "they [we]re thinking of letting [him] go temporarily," while waiting for the contract to be awarded, despite having agreede in the interview that his employment would not depend on the Companies' being awarded any particular contract. *Id.* ¶ 33.

## Standard of Review

The Companies move to dismiss pursuant to Rule 12(b)(6), under which Meerkreebs's pleadings are subject to dismissal if they "fail[ ] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "A claim has facial plausibility when the [claimant] pleads factual content that allows the court to draw the reasonable inference that the [opposing party] is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## Discussion

Under Maryland law,[4] reasonable reliance and resulting injury are elements of both intentional misrepresentation, also referred to as fraud or deceit, and negligent

---

[4] The parties agree that Maryland law applies. Astor Mem. 4; Systems Mem. 2; Pl.'s Opp'n 9.

misrepresentation.[5] *See Belyakov v. Med. Sci. & Computing*, 86 F. Supp. 3d 430, 438 (D. Md. 2015) (stating the elements of intentional misrepresentation as "(1) the defendant made a false representation to the plaintiff, (2) the falsity of the representation was either known to the defendant or the representation was made with reckless indifference to its truth, (3) the misrepresentation was made for the purposes of defrauding the plaintiff, (4) *the plaintiff relied on the misrepresentation and had the right to rely on it*, and (5) *the plaintiff suffered compensable injury as a result of the misrepresentation*" and noting that the allegations must be particularized (emphasis added)); *Martens Chevrolet, Inc. v. Seney*, 439 A.2d 534, 539 (Md. 1982) (stating the elements of negligent misrepresentation as "(1) the defendant, owing a duty of care to the plaintiff, negligently asserts a false statement; (2) the defendant intends that his statement will be acted upon by the plaintiff; (3) the defendant has knowledge that the plaintiff will probably rely on the statement, which, if erroneous, will cause loss or injury; (4) *the plaintiff, justifiably, takes action in reliance on the statement*; and (5) *the plaintiff suffers damage proximately caused by the defendant's negligence*" (emphasis added)). The Companies contend that, while Meerkreebs alleges that he relied on the promises the Companies allegedly made in his interview, his reliance was not reasonable, in light of the written, at-will contract of employment that followed, and they argue that he fails to allege any injury that resulted from the changes in his work schedule.[6]

---

[5] Meerkreebs does not oppose dismissal of Count III, his promissory estoppel claim. Pl.'s Opp'n 14. Accordingly, I will dismiss Count III.

[6] Astor also argues that the Companies are separate entities, such that it was not reasonable for Meerkreebs to rely on statements by a Systems employee when entering into an employment contract with Astor. *See* Astor Mem. 8 n.3. Systems "does not concede it is a joint employer with Astor," and asserts that, "should any portion of Plaintiff's Complaint move forward, SID will fully litigate that issue." Systems Mem. 1. But, Systems does not move to dismiss on that

Specifically, the Companies argue that Meerkreebs "has not (and cannot) allege that his employment at Astor was not at-will employment, whereby Astor could terminate his employment at any time, for any reason," and, because his employment was at-will, he cannot allege that he reasonably relied on a purported oral promise not to terminate his employment because of a contract ending or not being awarded. Astor Mem. 5. And, as the Companies see it, Meerkreebs's attempt to allege reasonable reliance also fails because he received the Offer Letter on about June 24, 2016 and signed it on June 27, 2016, months after the Companies allegedly made the oral promises in March 2016, and before he gave notice to Indus on June 27, 2016. Thus, the Companies argue, it was not reasonable for him to rely on the earlier promises in lieu of the terms of the Offer Letter he later signed. *Id.* at 9; Systems Mem. 3.

Meerkreebs concedes that his employment was at-will, but insists that he nonetheless can state a claim for misrepresentation because, in his view, he reasonably relied on the terms of employment promised in March 2016 when he resigned from his former position. Pl.'s Opp'n 2–3. According to Meerkreebs, his employment could be terminated at any time, for any reason, *except* that the parties had agreed that the reason could not be that a contract ended or was not awarded. *See id.* ("Had Mr. Meerkreebs' performance been deficient; had Mr. and Mrs. Agarawal had a personality conflict with Mr. Meerkreebs; or even if Defendants had simply

---

basis. *See id.* I find that, through his allegations that the Companies "share a human resources department, as well as a single proposal department, business development department, IT department, and other shared resources," and the Agrawals "jointly supervise all [of the Companies'] employees," Compl. ¶¶ 13–14, Meerkreebs sufficiently alleges that the Companies are joint employers that both participated in the interviewing and hiring process so as to avoid dismissal on this basis. *See Murphy-Taylor v. Hofmann*, 968 F. Supp. 2d 693, 725 (D. Md. 2013) ("Although there are various formulations of the test for joint employer or integrated employer status, the formulations all are directed at 'analyzing the amount of control the alleged joint employer had over employees.' ... '[C]ourts look to whether both entities exercise significant control over the same employees.'" (citations omitted)).

decided that they no longer wanted to have any employees whose last names began with the letter 'M', then there is no dispute that as an 'at-will' employee Mr. Meerkreebs could have been terminated on these bases or for no basis at all. However, the offer made to Mr. Meerkreebs, was specifically stated, by Ajay Agarawal, the owner of joint employer Defendant SID and the Chief Technology Officer of joint employer Defendant A&S, to be for a position which was not contingent on the receipt or maintenance of any individual contract. This was false. Thus, it gives rise to a misrepresentation claim.").

It is clear that the Companies misapprehend the nature of Meerkreebs's claim. The at-will employment relationship does not prevent Meerkreebs from stating a claim for misrepresentation, as "Maryland recognizes negligent misrepresentation claims in the context of an at-will employment relationship." *Smith v. Integral Consulting Servs., Inc.*, No. DKC-14-3094, 2016 WL 4492708, at *6 (D. Md. Aug. 26, 2016). This is because "[t]he employer's post-employment right to terminate the employment relationship logically or legally cannot immunize the employer from liability for a tort committed before the termination occurred." *Id.* (quoting *Griesi v. Atl. Gen. Hosp. Corp.*, 756 A.2d 548, 558 (Md. 2000)). Thus, when an employee (or prospective employee) claims misrepresentation based on statements that the prospective employer made, on which the employee relied in resigning from his former position, it is the loss of the former position, not the termination (or retraction) of the later employment, that is the injury. *See id.* at *8.

<u>*Injury*</u>

Meerkreebs alleges that he "relied upon Defendants['] misrepresentations in leaving his former employment and accepting employment with Defendants," and that he "was harmed when he was terminated based upon Defendants not having yet secured the APHIS contract

7

when he was told that his employment was not based upon or contingent upon any one contract." Compl. ¶¶ 38–39. Contrary to the Companies' arguments, *see* Astor Mem. 5 n.2, Meerkreebs's injury does not stem only from the alleged misrepresentations about whether employment was tied to a contract, and not from the alleged misrepresentations about his work schedule. Rather, he claims that he was harmed because he left his former employment because of the Companies' offer, which included a promise not to terminate his employment based on the status of a specific contract, *and* specific hours and telecommuting privileges. He alleges that, without those terms, he would not have left Indus and consequently would not now be without employment. *See* Compl. ¶¶ 30, 36–39. Accordingly, I find that Meerkreebs has alleged injury sufficiently with regard to the alleged misrepresentations, which are to be considered cumulatively, not each as a basis for recovery. *See id.*

<u>*Reasonable Reliance*</u>

As for the reasonableness of Meerkreebs's reliance, Judge Chasanow's analysis in *Smith*, 2016 WL 4492708, is informative. Integral had offered Smith at-will employment in a letter that "did not disclose that the offer was subject to government approval." *Id*. at *2. Smith signed the offer and resigned from his former position, relocated from Afghanistan to the United States, and then Integral rescinded the offer of employment because the government did not approve of Smith being hired to work on the contract. *Id.* at *2–3. Smith sued for fraud and negligent misrepresentation (and breach of contract), and Integral, like the Companies in the case before me, argued that Smith's "reliance was not justifiable because it was clear from the offer letter that the employment was at-will." *Id*. at *8. Noting that "[i]t is well established that a prospective employee can justifiably rely on pre-offer statements and written offers even in an

8

at-will context," the Court stated that the at-will nature of the job offer did not bar his claim and that Integral's "argument misstate[d] Plaintiff's claim," as

> [t]he "essence" of a negligent misrepresentation claim in an at-will employment context "is not whether the parties formed an employment contract," but whether a prospective employer "failed to exercise reasonable care in communicating information to him that was material to his business decision whether to accept the offer..., that he relied on those misrepresentations, and suffered injury as a result of that reliance."

*Id*. at *6, *8 (quoting *Griesi*, 756 A.2d at 557). The Court stated that "Defendant was legally entitled to terminate Plaintiff's employment at any time, but it was not entitled to induce Plaintiff to leave his former position by falsely representing that it had an available non-contingent position for him." *Id*. The Court concluded that the plaintiff's "reliance was reasonable, as the misrepresentation was made by Defendant's recruiter and director of human resources in a formal offer letter." *Id.* at *8.

The facts of *Newton v. The Kenific Group*, 62 F. Supp. 3d 439 (D. Md. 2014), are similar. There, Newton interviewed with Kenific and received a letter offer that did not state that it was contingent upon government approval, and the company "represented that the prospect of employment was 'rock-solid.'" *Id*. at 441. Newton signed the offer and resigned from his former position, and then Kenific "informed him that he would not be hired," as the government had not approved him. *Id*. Newton filed suit against Kenific, alleging, *inter alia*, negligent misrepresentation. *Id*. The Court denied Kenific's motion to dismiss the claim; with respect to reasonable reliance, it concluded that Plaintiff's allegation that "he justifiably relied on a 'rock solid' job offer from an experienced recruiter" was sufficient. *Id.* at 444.

Here, Meerkreebs, like Smith and Newton, decided to leave his former employment, relying on the terms of employment he was offered to make that decision. Certainly, Meerkreebs relied not only on the Offer Letter but also on oral promises made three months prior—terms that

were not reiterated in the Offer Letter that Astor asked him to sign. Indeed, he relied on those earlier statements to resign from his former position despite having received the Offer Letter that did not include them. Yet, the promise of the work schedule he wanted and the assurance that his employment would not be terminated as soon as a certain contract ended were "material to his business decision whether to accept that offer," and he has alleged that the Companies "failed to exercise reasonable care in communicating [that] information" to him, as it caused him to resign from his former position for employment that did not last. *See Griesi*, 756 A.2d at 557; *Smith*, 2016 WL 4492708, at *8.

The Companies assert that his reliance was unreasonable because the written contract differed from the terms discussed in the interview. It is true that, "[f]or a plaintiff to have a right to rely on an alleged misrepresentation, the plaintiff must reasonably believe in the 'full truth' of the misrepresentation," and "[a] person cannot reasonably believe in the full truth of an alleged misrepresentation that directly contradicts the terms of a contract to which the person is a signatory." *Bank of Am., N.A. v. Jill P. Mitchell Living Tr.*, 822 F. Supp. 2d 505, 536–37 (D. Md. 2011) (citing *James v. Goldberg*, 261 A.2d 753, 758 (Md. 1970)). Thus, "reliance on oral representations is unreasonable when it is contradicted by the written agreement." *CBRE Fin. TRS, LLC v. McCormick*, No. 08-CV-1964, 2009 WL 4782124, at *6 (D. Md. Dec. 8, 2009) (citing, *e.g.*, *Call Carl, Inc. v. BP Oil Corp.*, 554 F.2d 623, 631 (4th Cir. 1977) (concluding that the plaintiffs could not have reasonably relied on the alleged misrepresentations because there was "plainly contradictory contractual language."); *First Union Nat. Bank v. Steele Software Systems Corp.*, 838 A.2d 404 (Md. Ct. Spec. App. 2003) (concluding that business could not have reasonably relied on terms from contract negotiations "because they were contradicted by

the explicit terms of the [contract]")), *aff'd sub nom. CBRE Realty Fin. TRS, LLC v. McCormick*, 414 F. App'x 547 (4th Cir. 2011).

But here, the exclusion from the Offer Letter of the terms discussed at the interview does not make Meerkreebs's reliance unreasonable, because the oral promises that the Companies allegedly made were not "directly contradicted by the plain terms of the written agreement." *Id.* Rather, the Offer Letter stated that employment would be at-will, elaborated that "Astor ma[de] no guarantee of continued employment or employment for a specific length of time," and it provided a start date. Offer Ltr. It did not address telecommuting or what Meerkreebs's hours would be. Moreover, it did not state that employment was conditioned on any specific contract, which would have been contrary to Meerkreebs's understanding of the employment offer, and therefore made it no longer reasonable for him to rely upon it. *See Goode v. Am. Veterans, Inc.*, 874 F. Supp. 2d 430, 450 (D. Md. 2012) (noting that "[t]he presumption of at-will employment 'can be overcome by express or implied terms which show that the parties clearly intended to create a binding relationship for a specific period of time or until certain conditions occur'" (quoting *Mazaroff*, Maryland Employment Law § 3.2, at 166 (1990) (emphasis from *Goode* removed)). Thus, the Companies' written offer of at-will employment was consistent with—not in contradiction of—their earlier oral promise that Meerkreebs would not be terminated because a specific contract ended or was not awarded.

And, because there was no contradictory language, this case is unlike *Goode*, 874 F. Supp. 2d 430, on which the Companies rely. There, Goode insisted that her employer "made express promises of job stability to encourage Goode to accept AMVET's employment offer," by "'assur[ing]' her that as long as she performed her job responsibilities, she could work at AMVETS for as long as she wanted, subject to dismissal only for cause." *Id*. at 451–52. The

Court concluded that, despite these alleged promises,"[t]here [wa]s nothing in the record that support[ed] an inference of reasonable reliance, that it was reasonable for Goode to rely on oral statements so blatantly contradicted by three separate writings . . . that clearly stated the employment was 'at will,'" one of which Goode signed. *Id*. at 452.

Thus, Meerkreebs has sufficiently alleged that his reliance on the Companies' oral promises was reasonable because it was reasonable for him to believe that those earlier terms were a part of the "rock solid" offer of employment that he accepted, and that, while his at-will employment could be terminated at any time, the reason would not be because the Companies were not working on a specific contract. *See Newton*, 62 F. Supp. 3d at 444. Indeed, once he began working for the Companies, he had the hours and telecommuting days that they promised in the interview. Clearly, it was reasonable for him to rely on promises that the Companies actually upheld, albeit only for his first two months.

### *Candidate Profile*

Astor attached Meerkreebs's Candidate Profile to its Reply, to negate his alleged reliance, but this attachment, even if considered (which it is not, for reasons explained below), would not change the outcome. Astor Reply Ex. 1, ECF No. 16. On it, Meerkreebs stated that he "need[ed] an opportunity that [would] allow [him] to bring [his] Leadership and Infrastructure and Operations experience to the table," as his "current contract [would] end[] 7/15 with some possibility of extension but as a OPs oriented IT professional INDUS currently ha[d] no place for [him] to go." *Id.* As Astor sees it, this statement shows that Meerkreebs did not resign in reliance on the Companies' promises but rather because he was "actively looking for" other employment. *See* Astor Reply 7.

Preliminarily, the Court need not consider an argument made for the first time in a reply brief. *See Clawson v. FedEx Ground Package Sys., Inc.*, 451 F. Supp. 2d 731, 734 (D. Md. 2006) (citing *United States v. Williams,* 445 F.3d 724, 736 n.6 (4th Cir. 2006)). Moreover, I do not agree with Astor that this document is integral to the Complaint, such that it could be considered without converting Astor's motion to one for summary judgment. *See* Astor Reply 7 n.2. A document is "integral" if it, "by its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (quoting *Walker v. S.W.I.F.T. SCRL*, 517 F. Supp. 2d 801, 806 (E.D. Va. 2007) (emphasis from *Chesapeake Bay* removed). For example, "the documents that constitute the core of the parties' contractual relationship in a breach of contract dispute" are integral. *Id*. (quoting *Fisher v. Md. Dep't of Pub. Safety & Corr. Servs.*, No. JFM-10-206, 2010 WL 2732334, at *2 (D. Md. July 8, 2010)). Meerkreebs's Candidate Profile does not give rise to his claims of misrepresentation or promissory estoppel, and therefore it is not integral. *See id.*

Certainly, given that Meerkreebs attached an affidavit to his Opposition to Astor's motion and Astor attached the Candidate Profile to its Reply, I could convert Astor's motion to one for summary judgment, as both parties had "a reasonable opportunity to present all the material that is pertinent to the motion," which is what Rule 12(d) requires prior to conversion of a motion to dismiss to one for summary judgment. *See* Fed. R. Civ. P. 12(d); *see also Williams v. Dimensions Health Corp., Inc.*, No. PWG-16-4123, 2017 WL 5668217, at *3 (D. Md. Nov. 27, 2017) (noting that Rule 12(d)'s requirement is "satisfied when [as here] a party is 'aware that material outside the pleadings is before the court'" (quoting *Walker v. Univ. of Md. Med. Sys. Corp.*, No. CCB-12-3151, 2013 WL 2370442, at *3 (D. Md. May 30, 2013) (quoting *Gay v.*

*Wall*, 761 F.2d 175, 177 (4th Cir. 1985))). But, I have "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." *Kamara v. Prince George's Cty. Dep't of Corr.*, No. ELH-15-3952, 2017 WL 735549, at *9 (D. Md. Feb. 24, 2017) (quoting 5 C Wright & Miller, Federal Practice & Procedure § 1366, at 159 (3d ed. 2004, 2011 Supp.)), *aff'd,* 687 F. App'x 296 (4th Cir. 2017), *cert. denied,* No. 17-6899, 2018 WL 942572 (U.S. Feb. 20, 2018). Under these circumstances, in which the evidence is attached to support an argument presented for the first time in the reply brief, I will not convert the motion to one for summary judgment *See id.*; *see also Clawson*, 451 F. Supp. 2d at 734 (court typically does not consider argument raised for first time in reply).

In any event, even if I were to consider this evidence, it would not establish that Astor was entitled to judgment, because I could not determine as a matter of law that Meerkreebs's employment with Indus definitively would have ended on July 15, 2016, given that he alleged that there was "some possibility of extension." Nor could I determine as a matter of law that Meerkreebs would not have continued to seek (and perhaps find) other employment instead of relying on the Companies' promises to resign from Indus. Therefore, consideration of the Candidate Profile would not result in judgment in Astor's favor.

## **ORDER**

Accordingly, for the reasons stated in this Memorandum Opinion, it is, this 7th day of March, 2018, hereby ORDERED that

1. The stay of this case IS LIFTED;

2. The Companies' motions to dismiss, ECF Nos. 12 and 13, ARE GRANTED IN PART as to Count III only and ARE DENIED IN PART as to Counts I and II;

3. Count III for promissory estoppel IS DISMISSED by consent;

4. Defendants' answers to Counts I and II for intentional and negligent misrepresentation are due March 30, 2018.

                                                                      /S/
                                                Paul W. Grimm
                                                United States District Judge

lyb